J-S08011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL VINCENT ORR | |
| Appellant | No. 825 WDA 2015 |

Appeal from the Judgment of Sentence Entered April 27, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No: CP-26-CR-0001708-2014

BEFORE: STABILE, DUBOW, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.: **FILED SEPTEMBER 22, 2016**

Appellant, Michael Orr, appeals from the judgment of sentence entered in the Court of Common Pleas of Fayette County following Appellant's conviction for persons not to possess firearms and firearms not to be carried without a license.[1] Upon review, we affirm.

The trial court summarized the background of the case as follows.

On May 24, 2014, at approximately 1:29 A.M., Pennsylvania State trooper Adam Janosko and Trooper Patrick Biddle were on patrol in full uniform and driving a marked police vehicle when they observed a white Ford Escort station wagon parked in the Park Memorial Cemetery, on Coolspring Street, North Union Township, Fayette County. Trooper Janosko made contact with the driver of the vehicle, and determined that Appellant was the driver. Trooper Janosko observed that Appellant's eyes were bloodshot, his pupils were dilated, he was

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1).

overly anxious and nervous, had rapid body movements and confused speech. When Trooper Janosko asked Appellant why he was in the cemetery at that time, Appellant stated that he was attempting to turn around. Trooper Janosko observed a burnt crochet needle, and he communicated to Appellant that such an object was commonly used for drug use. Appellant stated that he had been smoking crack out of an empty "Mountain Dew" soda can and directed Trooper Janosko to the location of the can in the back of Appellant's vehicle. A further search of Appellant's vehicle led to the discovery and seizure of a .25 caliber Phoenix Arms pistol, syringes and a pill marked 2064 over "V", as well as the "Mountain Dew" can allegedly used by Appellant to smoke crack.

Trial Court Opinion (T.C.O.), 8/21/15, at 1-2. Additionally, Appellant attempted to justify the presence of the firearm in his vehicle, claiming that he placed it in his glove box to hide it from his cousin who had been brandishing the weapon at work while intoxicated. N.T. Jury Trial, 4/8-9/15, at 64-65. Knowing that he was not supposed to possess a firearm, Appellant directed the troopers' attention to the aforementioned drug paraphernalia to attempt to "lure" them away from the firearm in the glove box. *Id.* at 68.

Appellant filed a pretrial omnibus motion to dismiss for lack of probable cause, to suppress evidence, and as a writ of *habeas corpus*. The trial court denied Appellant's pretrial motion, "finding that physical evidence was properly seized from [Appellant's] vehicle, the statements made by Appellant prior to being Mirandized were spontaneous and without custodial interrogation, and the Commonwealth sufficiently established a prima facie case for the charges brought against Appellant." T.C.O., 8/21/15, at 3.

Following trial, a jury found Appellant guilty of persons not to possess firearms and firearms not to be carried without a license. *Id.* at 1. Appellant filed a post-sentence motion for a new trial, which the trial court denied. Appellant timely appealed. Appellant filed a Pa.R.A.P. 1925(b) statement, and the trial court issued a Pa.R.A.P. 1925(a) opinion.

Appellant raises three issues for our review.

1) Whether the evidence presented at trial sufficiently established that the defendant possessed or controlled the firearm?

2) Did the trial court err in denying the defendant's post-sentence motion for a new trial as the jury verdict was against the weight of the evidence?

3) Did the suppression court err in denying defendant's omnibus pre-trial motion in the nature of a motion to dismiss; motion to suppress physical evidence and statements; and a writ of *habeas corpus*?

Appellant's Brief at 7.[2]

_____

[2] In reviewing a sufficiency of the evidence claim, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." *Commonwealth v. Stevenson*, 894 A.2d 759, 773 (Pa. Super. 2006). "[W]here the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (citation omitted). "In reviewing appeals from an order denying suppression, our standard of review is limited to determining whether [the trial court's] factual findings are supported by the record and whether [its] legal conclusions drawn from those facts are correct. When
*(Footnote Continued Next Page)*

After careful review of the parties' briefs, the record on appeal, and the relevant case law, we conclude that the trial court's Rule 1925(a) opinion, authored by Judge Linda R. Cordaro, thoroughly and adequately disposes of Appellant's issues on appeal.[3]  *See* T.C.O., 8/21/15, at 3-13. We, therefore, affirm Appellant's judgment of sentence.  We direct that a copy of the trial court's August 21, 2015 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

_____
*(Footnote Continued)*

reviewing the rulings of a [trial] court, the appellate court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the [trial] court, [we are] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.  **Commonwealth v. Frederick**, 124 A.3d 748, 753-54 (Pa. Super. 2015) (citation omitted).  Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.  **In re L.J.**, 79 A.3d 1073, 1087 (Pa. 2013).  In evaluating a trial court's decision regarding a pre-trial *habeas corpus* motion, our standard of review is plenary.  **Commonwealth v. Dantzler**, --- A.3d ---, No. 681 EDA 2014, 2016 WL 910149, at *2 (Pa. Super. Mar. 9, 2016).

[3] We note the trial court relied on pre-**Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014) cases for the definition and identification of the elements of the "limited automobile exception," which required both probable cause and exigent circumstances for a warrantless search of a vehicle.  However, as also acknowledged by the trial court later in its opinion, in **Gary**, the Supreme Court abolished the exigency prerequisite in the context of the automobile exception.  T.C.O., 8/21/15, at 8 (quoting **Gary**, 91 A.3d 102, 138 (Pa. 2014)) ("[t]he prerequisite for a warrantless search [or seizure] of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/22/2016

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :

          Plaintiff,         :

            vs.           :      No. 1708 of 2014

MICHAEL VINCENT ORR,        :

          Defendant,     :

*CORDARO, Linda R., J.*

## Pa. R.A.P. 1925(b) OPINION

Before the Court are the "Concise Issues" pursuant to Pa.R.A.P. 1925(b) filed June 2, 2015, by Appellant Michael Vincent Orr, hereinafter "Appellant". On April 10, 2015, Appellant was convicted of Possession of a Firearm Prohibited[1] and Firearm Not to be Carried Without a License[2]. On April 27, 2015, Appellant was sentenced to undergo imprisonment at a State Correctional Institution for a period of not less than two (2) years nor more than four (4) years. On April 29, 2015, Appellant filed a Post-Sentence Motion for a New Trial, which this Court denied. Appellant thereafter filed a timely Notice of Appeal and Concise Issues under Pa.R.A.P. 1925(b).

## FINDINGS OF FACT

On May 24, 2014, at approximately 1:29 A.M., Pennsylvania State Trooper Adam Janosko and Trooper Patrick Biddle were on patrol in full uniform and driving a marked police vehicle when they observed a white Ford Escort station wagon parked in the Park Memorial

---

[1] 18 Pa.C.S.A. §6105(a)(1)

[2] 18 Pa.C.S.A. §6106(a)(1)

1

Cemetery, on Coolspring Street, North Union Township, Fayette County. Trooper Janosko made contact with the driver of the vehicle, and determined that Appellant was the driver. Trooper Janosko observed that Appellant's eyes were bloodshot, his pupils were dilated, he was overly anxious and nervous, had rapid body movements and confused speech. When Trooper Janosko asked Appellant why he was in the cemetery at that time, Appellant stated that he was attempting to turn around. Trooper Janosko observed a burnt crochet needle, and he communicated to Appellant that such an object was commonly used for drug use. Appellant stated that he had been smoking crack out of an empty "Mountain Dew" soda can and directed Trooper Janosko to the location of the can in the back of Appellant's vehicle. A further search of Appellant's vehicle led to the discovery and seizure of a .25 caliber Phoenix Arms pistol, syringes and a pill marked 2064 over "V", as well as the "Mountain Dew" can allegedly used by Appellant to smoke crack.

Appellant was convicted of Possession of a Firearm Prohibited, a second degree felony, punishable by a maximum term of imprisonment of ten (10) years and a maximum fine of $25,000.00. Appellant's prior record score is two (2), and this is a level five (5) offense. The offense gravity score is nine (9), and the standard range sentence is twenty-four (24) to thirty six (36) months. Appellant was sentenced to undergo imprisonment at a state correctional institution for a period of not less than two (2) years nor more than four (4) years. Appellant was also convicted of Firearms Not to be Carried Without a License, with no further penalty imposed by this Court. Appellant had previously been convicted of a felony and is prohibited from possessing firearms. Appellant is also a suspended driver due to a previous DUI conviction.

The complaints contained in Appellant's "Concise Issues under Pa. R.A.P. 1925(b)" are as follows:

2

**ISSUE NO. 1:** WHETHER THE EVIDENCE PRESENTED AT TRIAL SUFFICIENTLY ESTABLISHED THAT THE DEFENDANT POSSESSED OR CONTROLLED THE FIREARM?

**ISSUE NO. 2:** DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S POST-SENTENCE MOTION FOR A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

**ISSUE NO. 3:** DID THE SUPPRESSION COURT ERR IN DENYING DEFENDANT'S OMNIBUS PRE-TRIAL MOTION IN THE NATURE OF A MOTION TO DISMISS; MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS; AND A WRIT OF HABEAS CORPUS?[3]

## DISCUSSION

**ISSUE NO. 3:** DID THE SUPPRESSION COURT ERR IN DENYING DEFENDANT'S OMNIBUS PRE-TRIAL MOTION IN THE NATURE OF A MOTION TO DISMISS; MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS; AND A WRIT OF HABEAS CORPUS?

On November 11, 2014, Appellant filed an Omnibus Pretrial Motion in the nature of a motion to dismiss for lack of probable cause, motion to suppress evidence and statements, and a writ of habeas corpus. This Court denied Appellant's Omnibus Pretrial Motion, finding that physical evidence was properly seized from Defendant's vehicle, the statements made by Appellant prior to being Mirandized were spontaneous and without custodial interrogation, and the Commonwealth sufficiently established a prima facie case for the charges brought against Appellant.[4]

In an Omnibus Pretrial Petition for Habeas Corpus relief, the court must determine whether the Commonwealth has established a prima facie case of the crime being charged. *Com. v. Packard*, 767 A.2d 1068 (Pa. Super. 2001). A prima facie case consists of evidence viewed in the light most favorable to the Commonwealth that sufficiently establishes both the commission of a crime and that the accused is most likely the perpetrator of that crime. *Com. v. Lopez*, 654

---

[3] For organizational purposes, this opinion addresses Appellant's Concise Issue No. 3 first, followed by Issue No. 1 and Issue No. 2.

[4] This Court dismissed Count 7: Driving While BAC .02 or Greater While License Suspended

A.2d 1159 (Pa. Super. 1995). The prima facie case in support of a defendant's guilt consists of evidence presented by the Commonwealth that if accepted as true, would warrant the trial judge to allow the case to go to a jury. *Com. v. Austin*, 575 A.2d 141 (Pa. Super. 1990). At the hearing on Appellant's Omnibus Pretrial Motion, the Commonwealth presented the testimony of Trooper Janosko who stated that he seized the firearm from Appellant's vehicle and that Appellant was of the class of people prohibited from carrying a firearm. Further, Trooper Janosko related that he also recovered several items of paraphernalia consistent with drug use from Appellant's vehicle. As such this Court determined that the Commonwealth met the prima facie burden for the charges listed, and denied Appellant's motion.

Appellant argued that he was not Mirandized at the time he made statements to the troopers and any statements made should therefore be dismissed. The question of law before this Court is whether the initial interaction between Trooper Janosko and Appellant was a mere encounter or an investigative detention so as to trigger Appellant's rights under *Miranda*. This Court finds the situation is a classic example of the former.

Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. *Com. v. Mendenhall*, 552 Pa. 484, 488 715 A.2d 1117, 1119 (1998) (citing *Com. v. Polo*, 563 Pa. 218, 759 A.2d 372, 375 (2000)). The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. *Id.* The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional

4

equivalent of an arrest. *Id.* Finally, an arrest or "custodial detention" must be supported by probable cause. *Id.*

To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. *Id.* To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. *Id.* Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the Appellant's shoes. *Id.* Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions. *Com. v. Bybel*, 399 Pa.Super. 149, 158, 581 A.2d 1380, 1385 (1990). The fact that a defendant was the focus of the investigation is also a relevant factor in determining whether he was "in custody," but does not require, per se, Miranda warnings. *Bybel*, supra; *Com. v. Fento*, 363 Pa.Super. 488, 526 A.2d 784 (1987).

In this case, Trooper Janosko and Trooper Biddle both testified that they encountered Appellant sitting in his vehicle at the Park Memorial Cemetery, which at the time was closed. Trooper Janosko testified that he approached Appellant's vehicle because of concerns that Appellant was present at the cemetery to vandalize headstones or to take his life at the headstone

5

of a loved one. (Transcript P. 24). Trooper Biddle testified that the Troopers pulled their vehicle diagonal to Appellant's vehicle so Appellant would be free to leave should he so desire. (Transcript P. 49). Trooper Janosko asked questions of the Appellant, and he asked for identification from the Appellant. The purpose for which Trooper Janosko approached the vehicle was to ascertain the safety of the occupant(s), considering the area and the time of night. Under these circumstances, this Court finds that there was a "mere encounter" between Trooper Janosko and the Appellant, and there was no requirement for the Appellant to be Mirandized.

Turning to the issue of whether Trooper Janosko had probable cause to search Appellant's vehicle, this Court finds that the Commonwealth presented sufficient evidence to sustain its burden of showing probable cause. Appellant's Omnibus Pretrial Motion claimed that Trooper Janosko and Trooper Biddle conducted an illegal search and seizure of Appellant and his vehicle in violation of Appellant's rights under the United States and Pennsylvania Constitutions.

It is well settled that the Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate. A search conducted without a warrant is generally deemed to be unreasonable for constitutional purposes. *Com. v. Stewart*, 740 A.2d 712, 715 (Pa.Super.1999), aff'd, 568 Pa. 499, 798 A.2d 697 (2002) (internal citation omitted). While the United States Supreme Court has recognized an automobile exception to the warrant requirement, the Pennsylvania Supreme Court has not. *Com. v. Casanova*, 570 Pa. 682, 808 A.2d 569 (2002). Nevertheless, this Court has adopted a limited automobile exception under Article I, § 8 of the Pennsylvania Constitution. *Com. v. McCree,* 592 Pa. 238, 252, 924 A.2d 621, 630 (2007). Specifically, a warrantless search of an automobile may be conducted "when

6

there exists probable cause to search and exigent circumstances necessitating a search." *Casanova*, supra at 211 (quoting Stewart, supra at 715).

In determining whether probable cause exists, we apply a totality of the circumstances test. Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. See *Com. v. Thompson*, 985 A.2d 928 (Pa. 2009) (citing *Com. v. Clark*, 735 A.2d 1248 (Pa. 1999); *Com. v. Rodriguez*, 585 A.2d 988 (Pa. 1991); *Texas v. Brown*, 460 U.S. 730 (1983); *Illinois v. Gates*, 462 U.S. 213 (1983)). The question we ask is not whether the officer's belief was correct or more likely true than false. *Id.* Rather, we require only a probability, and not a prima facie showing, of criminal activity. *Id.*

Likewise, "exigent circumstances" arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed or because there exists a threat of physical harm to police officers or other innocent individuals. *Com. v. Copeland*, 955 A.2d 396, 400 (Pa.Super.2008) (quoting *Com. v. Stewart*, 740 A.2d 712, 717 (Pa.Super.1999)). "[A] court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence." *Id.* (quoting *Stewart*, supra at 717). Such a search is justified because (1) a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police are prohibited from immobilizing it until a warrant is secured; and (2) one's expectation of privacy with respect to a motor vehicle is significantly less than that relating to one's home or office. *Com. v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978). Furthermore, where an officer who has not intruded into a constitutionally protected area sees contraband in plain view, such as the

7

burnt crochet needle in this case, that evidence may be seized without a warrant. *Com. v.*
*Pullano,* 295 Pa.Super. 68, 440 A.2d 1226 (1982). See *Com. v. Rosa,* 561 Pa. 693, 751 A.2d 189
(2000)(An officer may search an automobile for a weapon if he has a reasonable belief the
suspect is dangerous and the suspect might gain control of a weapon.) Further, the Pennsylvania
Supreme Court in Com. v. Gary, held that mobility is the only exigent circumstance needed to
conduct a warrantless search of a vehicle:

> In sum, our review reveals no compelling reason to interpret
> Article I, Section 8 of the Pennsylvania Constitution as providing
> greater protection with regard to warrantless searches of motor
> vehicles than does the Fourth Amendment. Therefore, we hold
> that, in this Commonwealth, the law governing warrantless
> searches of motor vehicles is coextensive with federal law under
> the Fourth Amendment. The prerequisite for a warrantless search
> of a motor vehicle is probable cause to search; no exigency beyond
> the inherent mobility of a motor vehicle is required. The consistent
> and firm requirement for probable cause is a strong and sufficient
> safeguard against illegal searches of motor vehicles, whose
> inherent mobility and the endless factual circumstances that such
> mobility engenders constitute a *per se* exigency allowing police
> officers to make the determination of probable cause in the first
> instance in the field.

*Com. v. Gary,* 625 Pa. 183, 91 A.3d 102, 138 (2014)

Trooper Janosko stated that during his conversation with Appellant, Appellant appeared
extremely nervous and excited, and spoke very quickly. (Transcript P. 25). After speaking to
Appellant, Trooper Janosko stated that he returned to his patrol vehicle and queried Appellant's
information through the CLIEN[5] and NCIC databases. (Transcript P. 25). The database search
revealed that Appellant did not possess a valid driver's license. After speaking with Appellant
further, Trooper Janosko testified that he observed a crochet needle located between the driver

---

[5] CLEIN stands for the "Commonwealth Law Enforcement Information Network"

side door and driver's seat, and that the needle appeared to be rusted and burnt on one end. (Transcript P. 26). Trooper Janosko testified that his training, knowledge, and experience with drug enforcement led him to believe that the crochet needle was being used as a "push rod", which is commonly used to empty out the glass pipes used to smoke illegal substances. (Transcript P. 27). Trooper Janosko testified that he explained the significance of the crochet needle to Appellant, and asked Appellant for consent to search the vehicle. (Transcript P. 27). Appellant initially denied permission to search his vehicle. Trooper Janosko testified that Appellant then stated "I want to explain to you why I'm really in the cemetery." (Transcript P. 27). Appellant stated to Trooper Janosko that he had fabricated a smoking device out of a "Mountain Dew" can and had recently used the can to smoke crack cocaine. (Transcript P. 27). See, e.g., *Com. v. Baez*, 554 Pa. 66, 720 A.2d 711, 720 (1998)(volunteered or spontaneous utterances by an individual are admissible even without Miranda warnings.). Appellant then directed Trooper Biddle to the location of the can in his vehicle. (Transcript P. 27).

Trooper Janosko testified that he retrieved the can and conducted a complete search of the vehicle which revealed four syringes and an unloaded Raven Arms .25-caliber pistol in the unlocked glovebox of the car. Appellant's behavior and spontaneous statements, combined with the existence of paraphernalia in the vehicle, was sufficient to warrant Trooper Janosko's reasonable belief that a crime was being committed. Based upon the above facts and case law, this Court found that Trooper Janosko had probable cause to search Appellant's vehicle, the vehicle was sufficiently mobile to qualify as an exigent circumstance, and any evidence seized therefrom is not subject to suppression.

**ISSUE NO. 1:** WHETHER THE EVIDENCE PRESENTED AT TRIAL SUFFICIENTLY ESTABLISHED THAT THE DEFENDANT POSSESSED OR CONTROLLED THE FIREARM?

The standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. *Com. v. Stevenson*, 894 A.2d 759, 773 (Pa.Super.2006) quoting *Com. v. Smith*, 863 A.2d 1172, 1176 (Pa.Super.2004). The Court may not weigh the evidence or substitute its judgment for that of the fact-finder. *Id.* Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no facts supporting a finding of guilt may be drawn. *Id.* The fact-finder, when evaluating the credibility and weight of the evidence, is free to believe all, part, or none of the evidence. *Id.*

The Appellant was convicted of 18 Pa.C.S.A. §6105: Possession of a Firearm Prohibited which states:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth. *18 Pa.C.S.A. §6105(a)(1).*

The parties in this matter stipulated to the following: Appellant is of the class of persons ineligible to possess a firearm since 2009, that he did not have a license to carry a firearm, and that he is ineligible to receive a license to carry a firearm.

Trooper Janosko testified that while executing a lawful search of Appellant's vehicle, he seized a Raven's .25-caliber pistol inside Appellant's glove compartment. Appellant stated that he was aware of the firearm inside the glove compartment of his vehicle. (Transcript P. 67). As

10

such, this Court finds that the Commonwealth provided sufficient evidence to allow the jury to conclude that Appellant was in possession of a firearm more than sixty (60) days from the time he was prohibited from doing so. *See Com. v. Bryant*, 491 A.2d 181 (Pa. Super. 1985)(Testimony by an arresting officer that defendant was in possession of a .357 Magnum, testimony by clerk of courts that defendant was convicted of a crime of violence, i.e., burglary, in the Commonwealth, and the weapon itself, which was admitted into evidence and thus subject to view by the jury, was sufficient to sustain conviction for former convict not to own a firearm). This Court instructed the jury on the charge of possession of a firearm prohibited as follows:

"The [defendant] has been charged with possession of a firearm prohibited. To find the [defendant] guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt: first, that the [defendant] was a person prohibited by law from possessing a firearm; second, that the [defendant], on a date more than sixty days from the time he became prohibited from possessing a firearm did, in fact, possess a firearm."

"The term "firearm" includes any weapon that is designed or may readily be converted to expel any projectile by the action of an explosive. It also includes the frame or receiver of any such weapon. For a person to possess a firearm, he or she must have the intent to control and power to control the firearm."

"The [defendant] has been charged with carrying a firearm without a license. To find the [defendant] guilty of this offense, you must find that each of the following three (3) elements has been proven beyond a reasonable doubt: first, that the [defendant] carried a firearm in a vehicle…second, that the [defendant] was not in his place of abode, that is, his home, or his fixed place of business; and third, that the [defendant] did not have a valid and lawfully issued license for carrying the firearm." (Transcript P. 86-7).

Appellant argued that his conduct in taking and hiding the firearm was justified to avoid a substantially greater harm that could have potentially been caused by his cousin brandishing the firearm. (Transcript P. 64). In this case, Appellant stated that while he was working at Nudo's Tire Division, Dawson, Fayette County, his cousin was in possession of the Raven's .25-caliber pistol. (Transcript P. 64). Appellant testified that his cousin had been intoxicated while working at Nudo's and was brandishing the firearm in front of employees and customers. (Transcript P.

11

64) Appellant testified that he attempted to hide the firearm from his cousin multiple times before securing the firearm in the glovebox of his car. (Transcript P. 64). Appellant stated that he felt his cousin may harm himself or others. (Transcript P. 64).

This Court instructed the jury on justification as follows:

> "Justification is a defense if the defendant reasonably believed that his actions were necessary to avoid a harm or evil to himself or to someone else that was or would have been greater than the crime with which he is charged. The Commonwealth has the burden of disproving the defense of justification. Thus you may find the defendant guilty if you are satisfied beyond a reasonable doubt that his conduct was not justified under the principle I have just set." (Transcript P. 87)

The jury did not accept the justification defense raised by the Appellant. The jury could properly find, based solely on the testimony of Trooper Janosko, that the Appellant did in fact possess a firearm in his vehicle, and he was not justified in doing so.

**ISSUE NO. 2:** DID THE TRIAL COURT ERR IN DENYING THE DEFENDANT'S POST-SENTENCE MOTION FOR A NEW TRIAL AS THE JURY VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE?

"[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.' " *Com. v. Sanders*, 42 A.3d 325, 331 (Pa.Super.2012) (partially quoting *Com. v. Diggs*, 597 Pa. 28, 949 A.2d 873, 880 (2008)); accord *Com. v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189–90 (1994) ("One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence."). In this setting, "an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Sanders*, supra at 331 (quoting *Com. v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003)). The trial court's ruling is reversed only if the verdict "is so contrary to the

12

evidence as to shock one's sense of justice." *Sanders*, supra at 331 (quoting *Champney*, supra at 408). *Com. v. Nypaver*, 2013 PA Super 144, 69 A.3d 708, 717-18 (2013).

Herein, this Court concluded that the jury verdict does not shock one's sense of justice. The Commonwealth presented testimony from Trooper Adam Janosko and Trooper Patrick Biddle, both of whom stated that they observed Appellant in the vehicle containing the weapon. The jury did not find Appellant's testimony that he retrieved the firearm from his intoxicated cousin for safety reasons to be credible. *Nypaver*, supra at 717 (factfinder "is free to believe all, part or none of the evidence"). Based on the Commonwealth's testimony, the jury found that the Appellant did possess the firearm in his vehicle, and his conduct was not justified. The jury's verdict is not contrary to the evidence as to shock one's sense of justice. Based on the above facts and case law, this Court recommends that the sentence in this matter be affirmed.

Janice Snyder

FILED 2015 AUG 21 PM 11 16

BY THE COURT:

_____, J.
LINDA R. CORDARO

DATE: ___8/21/15___

13